IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | |
|---|---|
| Fargo Assembly of PA, Inc., ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | No. 5:19-cv-06133-RK |
| Crete Homes, LLC, ) | |
| Defendant. ) | |

## ORDER

Both parties move for judgment on the pleadings. After careful consideration, Plaintiff Fargo Assembly of PA, Inc.'s ("Fargo Assembly") Motion for Judgment on the Pleadings (Doc. 29) is **GRANTED IN PART AND DENIED IN PART**, and Defendant Crete Homes, LLC's ("Crete Homes") Motion for Judgment on the Pleadings (Doc. 31) is **DENIED**. Specifically, the Court grants Fargo Assembly's Motion for Judgment on the Pleadings on its claim for declaratory judgment, but the Court denies judgment on the pleadings on Fargo Assembly's claim for specific performance. Instead, the Court finds Fargo Assembly is entitled to $10,000 in liquated damages pursuant to the parties' contract.

### Background

On August 13, 2019, Fargo Assembly agreed to sell commercial real estate located at 202 North 41st Street in Bethany, Missouri (hereinafter, "the property") to Crete Homes. (Doc. 10, ¶¶ 1, 30; Doc. 10-1, at 1; Doc. 12, ¶¶ 1, 30.) The parties agreed to a purchase price of $290,000, with an earnest money payment of $10,000 of the purchase price placed in escrow when the contract was made. (Doc. 10, ¶¶ 2-3, 30; Doc. 10-1, at 1; Doc. 12, ¶¶ 2-3, 30.) The parties do not dispute the contract is valid, and its effective date is August 13, 2019. (Doc. 10, ¶ 30; Doc. 12, ¶ 30, Counterclaim ¶ 12; Doc. 13, ¶ 12.) Among other things, the parties agreed to the following:

**V. CONDITION OF THE PROPERTY:**

    a. This Property is being sold AS IS, WHERE IS, subject to environmental problems and violations which may exist in or with respect to the Property, if any. Buyer shall have thirty (30) days from the Effective Date of this contract to obtain written inspection reports of the Property from any qualified inspector, contractor, appraiser or consultant that Buyer may engage ("Inspection Period") . . . . Buyer shall immediately repair any damage to the Property, and indemnify and hold Seller harmless from and against all claims, costs, demands and expenses, including without

      limitation, reasonable attorneys' fees and court costs, resulting from these inspections. Prior to the expiration of the Inspection Period, Buyer shall provide written notice stating whether (1) Buyer accepts Property AS IS, WHERE IS (at which time the earnest money shall be non-refundable); or (2) Buyer is terminating the contract with the earnest money to be returned to Buyer ("Inspection Notice"). Failure of Buyer to obtain inspections and/or deliver an Inspection Notice to Seller prior to the expiration of the Inspection Period shall be deemed an acceptance of Property AS IS, WHERE IS (at which time the earnest money shall be non-refundable).

  b. Until closing or transfer of possession, risk of loss to the Property, ordinary wear and tear excepted, shall be upon the Seller. Should an insured loss have occurred prior to closing, Buyer at its discretion may elect assignment of claim and closing credit for deductible in lieu of Seller repairing damage. After closing or transfer of possession, such risk shall be upon the Buyer.

  c. Unless otherwise agreed upon in writing, Buyer, by closing or taking possession of the Property, shall be deemed to have accepted the Property in its then condition, including all fixtures thereon and any personal Property being transferred hereunder. Buyer is purchasing this Property based on his or her own inspection and NO WARRANTIES are expressed or implied by Seller, or Seller's Broker or Buyer's Broker with reference to the condition of the Property or any fixtures or personal Property.

  d. Except for the provisions above, the Seller agrees to deliver the Property and improvements, unencumbered by lease or leases, thereon in their present condition, ordinary wear and tear excepted.

(Doc. 10-1, at 3, § V.) The sale was scheduled to close "on or before September 30, 2020," at which time Fargo Assembly would deliver legal, actual, and complete possession of the property to Crete Homes. (*Id*. at 4.)

      On August 21, 2019, Crete Homes' inspector viewed the property's roof. (Doc. 10, ¶ 11; Doc. 12, ¶ 11.) The inspector determined the roof was damaged during a hailstorm in May 2019. (Doc. 10, ¶ 13; Doc. 12, ¶ 13.) On August 26, 2019, Crete Homes sent a letter to Fargo Assembly, stating "it was discovered that the roof . . . has storm damage that has been deemed unacceptable." (Doc. 10, ¶ 12; Doc. 12, ¶ 12.) Crete Homes suggested reviewing the property's insurance policy and "fil[ing] an insurance claim to repair the damage if possible, therefore allowing both parties to meet the closing dates in the contract." (*Id*.) The sale did not close. (Doc. 12, Counterclaim ¶ 17; Doc. 13, ¶ 17.) As a result, this lawsuit was filed, and the parties have filed the present cross-motions for judgment on the pleadings.

      There is no dispute that Crete Homes did not terminate the contract pursuant to subsection V(a). However, the parties disagree on the proper construction of the contract. (Doc. 10, ¶ 39;

Doc. 12, ¶ 39; Doc. 30; Doc. 32.) Fargo Assembly argues the risk of loss provision, subsection V(b), applies to the time period between the contract's effective date and the closing date, and the risk of loss provision does not apply to damage or defects predating the contract. (Doc. 10, ¶¶ 19, 22; Doc. 30, at 1-2.) Fargo Assembly maintains that the property's condition prior to the contract's effective date, including the roof damage, was factored into the parties' negotiations, including purchase price. (Doc. 10, ¶ 20.) Fargo Assembly contends Crete Homes, by not expressly terminating the contract, accepted the property as is. (*Id*. ¶¶ 16-17.) Fargo Assembly asks that the Court direct Crete Homes to release the earnest money to Fargo Assembly, pay Fargo Assembly $280,000, and execute closing documents.

In contrast, Crete Homes contends the contract does not limit an insured loss to the time period between the contract's effective date and the closing date, and Fargo Assembly is required to assign a claim to Crete Homes for the insured loss, i.e., the roof damage. (Doc. 32, at 3.) Crete Homes claims it has "the right to elect an assignment of an insurance claim should an insured loss have occurred prior to closing, with a closing credit for the deductible on the claim." (Doc. 12, Counterclaim ¶ 30.) Crete Homes alleges it elected an insurance claim for the roof damage. (Doc. 12, ¶ 31.) Crete Homes maintains Fargo Assembly breached the contract "by refusing to assign an insurance claim" and close on the sale. (*Id*. ¶¶ 32-33.) Crete Homes asks that the Court direct Fargo Assembly to make and assign an insurance claim to Crete Homes for the roof damage and direct the title company to release the $10,000 earnest money to Crete Homes.

## Legal Standard

"After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is appropriate where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law." *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 803 (8th Cir. 2002) (citations omitted). In considering a motion for judgment on the pleadings, the court "accept[s] as true all facts pleaded by the non-moving party and grant[s] all reasonable inferences from the pleadings in favor of the non-moving party." *Id.* The court may consider exhibits to or documents necessarily embraced by the pleadings. Fed. R. Civ. P. 10(c) (stating "a written instrument that is an exhibit to a pleading is part of the pleading for all purposes."); *Greenman v. Jessen*, 787 F.3d 882, 887 (8th Cir. 2015); *Surgical Synergies, Inc. v. Genessee Assocs., Inc.*, 432 F.3d 870, 873-74 (8th Cir. 2005).

The Court reviews a motion for judgment on the pleadings under the same standard that governs motions to dismiss for failure to state a claim. *Ashley Cty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009); *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). To survive a motion to dismiss for failure to state a claim, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The claim for relief must be "'plausible on its face,'" meaning it must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 556 (2007)). Mere "'labels and conclusions,'" "'formulaic recitation[s] of the elements of a cause of action,'" and "'naked assertion[s]' devoid of 'further factual enhancement'" are insufficient. *Id.* (quoting *Twombly*, 550 U.S. at 555, 557).

## Discussion

### I. Interpretation of the Contract

When interpreting contracts, the Court must "ascertain the intention of the parties and to give effect to that intention." *Vest v. Kan. City Homes, LLC*, 288 S.W.3d 304, 310 (Mo. Ct. App. 2009) (citation omitted); *Whelan Sec. Co. v. Kennebrew*, 379 S.W.3d 835, 846 (Mo. banc 2012) (quoting *DeBaliviere Place Ass'n v. Veal,* 337 S.W.3d 670, 676 (Mo. banc 2011)).[1] The parties' intent "is determined based on the contract alone unless the contract is ambiguous." *Vest*, 288 S.W.3d at 310 (citation omitted). If the parties' contract is unambiguous, "'the intent of the parties is to be discerned from the contract alone' based on the plain and ordinary meaning of the language used." *Whelan Sec. Co.*, 379 S.W.3d at 846 (citation omitted). The parties agree the contract is unambiguous and must be considered as a whole. (Doc. 30, at 3, 9; Doc. 32, at 3; Doc. 33, at 1; Doc. 34, at 1.)

#### A. Acceptance/Termination Provision

Pursuant to the contract, Crete Homes agreed to buy the property "AS IS, WHERE IS, subject to environmental problems and violations which may exist in or with respect to the Property, if any." (Doc. 10-1, at 3, § V(a).) Crete Homes also agreed the purchase was based on its inspection of the property, and Fargo Assembly neither expressed nor implied any warranties regarding the property's "condition." (*Id.* § V(c).) Beginning on August 13, 2019, Crete Homes had thirty days to inspect the property and "provide written notice" to Fargo Assembly stating (1)

---

[1] The contract is governed by Missouri law. (Doc. 10-1, at 6.)

it accepted the property "AS IS, WHERE IS," or (2) it "was terminating the contract with the earnest money to be returned" (hereinafter, "acceptance/termination provision"). (*Id.* at 1, 3, § V(a).)

The contract's language is plain and unequivocal: Crete Homes was required to provide written notice of its acceptance or termination to Fargo Assembly. Because the language is unambiguous, the acceptance/termination provision must be enforced as written. *Deal v. Consumer Programs, Inc.*, 470 F.3d 1225, 1230 (8th Cir. 2006) (citations omitted) (holding a contract using "plain and unequivocal language . . . must be enforced as written."); *see also Nat'l Starch & Chem. Corp. v. Newman*, 577 S.W.2d 99, 106 (Mo. Ct. App. 1978) (citations omitted). When a court considers the sufficiency of a written notice required by a contract, "technical accuracy in the wording of a notice is not required but the notice must be so certain that it cannot be reasonably misunderstood." *Homefield Commons Homeowners Ass'n v. Roy H. Smith Real Estate Co.*, 500 S.W.3d 910, 914 (Mo. Ct. App. 2016) (citations omitted).

The pleadings establish Crete Homes inspected the property and sent a letter to Fargo Assembly before the thirty-day period concluded. Crete Homes concedes its letter did not state it was accepting the property or terminating the contract. (Doc. 10, ¶ 14; Doc. 12, ¶ 14.) Instead, Crete Homes' letter referenced hail damage to the property's roof and suggested reviewing the property's insurance policy and "fil[ing] an insurance claim to repair the damage if possible, therefore allowing both parties to meet the closing dates in the contract." (Doc. 10, ¶ 12; Doc. 12, ¶ 12, Counterclaim ¶ 13; Doc. 13, ¶ 13.) It is undisputed that Crete Homes did not technically comply with the contract's acceptance/termination provision.

Moreover, Crete Homes' communication to Fargo Assembly was not "so certain" that it could not be reasonably misunderstood. In fact, based on the pleadings, Crete Homes' communication to Fargo Assembly does not indicate whether Crete Homes was or would be accepting the property or terminating the contract. Unfortunately, Crete Homes does not address its compliance – or lack thereof – with the contract's acceptance/termination provision in its briefing. The Court finds no material facts remain to be resolved with regard to whether Crete Homes complied with the contract's acceptance/termination provision. Simply, Crete Homes failed to comply – technically or otherwise – with the acceptance/termination provision.

According to the contract, Crete Homes' failure to notify Fargo Assembly that it was terminating the contract was "deemed an acceptance" of the property "AS IS, WHERE IS (at which

5

time the earnest money shall be non-refundable)." (Doc. 10-1, at 3, § V(a).) Thus, when Crete Homes failed to notify Fargo Assembly in writing that it was terminating the contract before the thirty-day period expired, its inaction was deemed acceptance of the property "AS IS, WHERE IS." Because Crete Homes accepted the property, Crete Homes' earnest money is non-refundable, pursuant to the parties' contract.

### B. Risk of Loss Provision

Instead of addressing whether it complied with the acceptance/termination provision, Crete Homes contends the parties' dispute "rests on the interpretation of a single sentence . . . regarding Fargo's obligation to assign an insurance claim in the event of an 'insured loss.'" (Doc. 32, at 1-2.) Crete Homes argues one sentence in the risk of loss provision applies to any loss occurring at any time before the closing date. (Doc. 12, Counterclaim ¶¶ 30-33.) According to Crete Homes, any loss, including losses occurring before the parties executed the contract, are covered by this sentence. Pursuant to this one sentence, Crete Homes claims it elected assignment of an insured claim for the roof damage, which occurred before the contract was executed.

The plain language of the "risk of loss" provision, not just the one sentence, belies Crete Homes' argument. "Until closing or transfer of possession, risk of loss to the Property . . . shall be upon the Seller. Should an insured loss have occurred prior to the closing, Buyer at its discretion may elect assignment of claim and closing credit for deductible in lieu of Seller repairing damage." (Doc. 10-1, at 3, § V(b).) Upon transfer of possession, the risk of loss passed to Crete Homes. (*Id.*) "Risk of loss" is defined as "[t]he **danger or possibility of damage** to, destruction of, or misplacement of goods or other property" and "[r]esponsiblity for bearing the costs and expenses of such damage, destruction, destruction, or misplacement." *Risk of Loss*, Black's Law Dictionary (11th ed. 2019) (emphasis added). Utilizing this definition, the parties agreed Fargo Assembly assumed "responsibility for bearing the costs and expenses" related to the "possibility of damage" to the property.

When the parties executed the agreement on August 13, 2019, they agreed Fargo Assembly assumed risk of loss to the property "[u]ntil closing or transfer of possession." The first sentence of the risk of loss provision is clear: beginning on August 13, 2019, and "until" the parties closed or transferred possession of the property, Fargo Assembly assumed the risk for any loss occurring to the property. This plain and ordinary language cannot be interpreted to include losses occurring before the parties executed the contract.

Crete Homes essentially disregards the initial sentence of the risk of loss provision. Instead, concentrating on the second sentence, Crete Homes argues Fargo Assembly bears the risk of any insured loss, including insured losses that occurred before the parties executed the contract. When read in isolation, this sentence is not the model of clarity. The parties use of "should" suggests "if" or "when," indicating something may happen in the future, viewed from the time of contracting. However, the parties' use of "have occurred" could reference a loss that already occurred but could also be because the parties utilized the closing date as the moment at which the parties view the loss, which then would be in the past.

Fortunately, the Court is not permitted to interpret this one sentence in a vacuum. The Court must interpret the language "by reference to the contract as a whole." *Purcell Tire & Rubber Co. v. Exec. Beechcraft, Inc.*, 59 S.W.3d 505, 510 (Mo. banc 2001). When considering the contract as a whole, it is clear the parties intended to contract for the sale of the property "as is." First and foremost, the parties agreed the property was being sold "as is" – to wit, the then-current condition of the property – when they executed the contract on August 13, 2019. The parties' intent is expressly and clearly provided throughout the contract.

First, subsection V(a) unambiguously states the property was being sold in the condition it was on August 13, 2019. Therein, the parties agreed the property was being sold "as is" only subject to "environmental problems and violations which may exist," and Crete Homes would be accepting the property "as is." (Doc. 10-1, at 3, § V(a).) The parties also agreed if Crete Homes failed to comply with the notification requirement, as is the case here, it would be deemed to have accepted the property "as is." (*Id.*)

Second, subsection V(c) establishes Crete Homes agreed to accept the property in the condition it was on August 13, 2019. According to the contract, Crete Homes, "by closing or taking possession of the Property, shall be deemed to have accepted the Property in its then condition . . . ." (*Id*. § V(c).) In the same section, the parties expressly stated Crete Homes' purchase of the property was "based on [its] own inspection," and "NO WARRANTIES" were "expressed or implied by" Fargo Assembly "with reference to the condition of the property." (*Id*.)

Third, subsection V(d) unequivocally articulates Crete Homes would receive the property in the condition it was on August 13, 2019. Specifically, the parties agreed Fargo Assembly would deliver the property to Crete Homes in its "present condition, ordinary wear and tear excepted." (*Id.* § V(d).) Accordingly, except for "ordinary wear and tear" occurring between August 13,

2019, and the date of the closing, Crete Homes agreed to accept the property in the condition it was on August 13, 2019. (*Id.*)[2]

Subsections V(a), V(b), V(c), and V(d), when considered both individually and collectively, establish Crete Homes agreed to purchase the property in the condition it was on August 13, 2019. Furthermore, the contract does not establish Fargo Assembly assumed the risk for losses to the property occurring before August 13, 2019. Instead, the parties agreed and the Court finds Fargo Assembly assumed the risk of loss to the property occurring after August 13, 2019, and before the sale closed. Because the roof damage occurred before August 13, 2019, subsection V(b) does not apply.[3] Accordingly, Fargo Assembly is not required to assign a claim or repair the roof. For all these reasons, the Court finds Fargo Assembly performed its obligations under the contract, and Crete Homes failed to perform its obligations under the contract.[4]

## II.   Liquidated Damages and/or Specific Performance

Fargo Assembly asks the Court to direct Crete Homes to perform the remaining obligations under the contract, including the release of the $10,000 earnest money, pay the remaining $280,0000, and execute all closing documents. Crete Homes, in the event the Court finds it breached the contract, argues Fargo Assembly is entitled to the earnest money deposit and is not permitted to obtain specific performance. The parties' contract includes a default provision, which, in relevant part, states, "[i]f the Buyer refuses to close for reasons not provided under this contract, the Seller and Buyer agree that the [$10,000] earnest money shall be forfeited as liquidated damages to the Seller." (Doc. 10-1, at 5, § X.)

---

[2] Also, in section XII, the parties expressed their understanding that the listing broker and its sales associates did not attest to, among other things, the property's "condition," and the parties agreed to hold harmless the listing broker and its sales associates. (Doc. 10-1, at 5, § XII.)

[3] The Court notes both parties were aware of the roof damage prior to executing the contract. (Doc. 12, ¶ 21.) Yet, the contract does not discuss the roof damage. And the parties did not carve out an exception for the roof damage, considering the property was being sold "as is," in its then-current position, and without warranties.

[4] Even if the Court were to find the second sentence of the risk of loss provision covered the pre-contract roof damage and assume the roof damage is an insured loss, the pleadings alone do not establish Crete Homes elected assignment of an insurance claim associated with the roof damage. Rather, Crete Homes suggested reviewing the property's insurance policy and "fil[ing] an insurance claim to repair the damage if possible, therefore allowing both parties to meet the closing dates in the contract." (Doc. 10, ¶ 12; Doc. 12, ¶ 12, Counterclaim ¶ 13; Doc. 13, ¶ 13.)

Fargo Assembly argues it is entitled to specific performance because Crete Homes denied Fargo Assembly the benefit of its bargain and prevented the property from being sold or rented to someone else. (Doc. 35, at 4-5.) Fargo Assembly maintains the liquidated damages were intended to remedy its damages if Crete Hoes accepted the property but refused to close the sale. (Doc. 33, at 3.) The liquidated damages, according to Fargo Assembly, were not intended to provide relief to Fargo Assembly if Crete Homes, as it did here, refused to walk away from the contract and release its earnest money to Fargo Assembly. (*Id*. at 2-3.) It is this additional conduct by Crete Homes that forms the basis of Fargo Assembly's request for specific performance.

To support its argument, Fargo Assembly primarily relies on two cases. (Doc. 33, at 2-4.) Both are distinguishable. In *Robert Blond Meat Co. v. Eisenberg*, 273 S.W.2d 297, 299 (Mo. 1954), the Missouri Supreme Court found specific performance was properly decreed. Contrary to this matter, the contract in *Robert Blond Meat Co.* did not contain "a true liquidated damages provision." *Id*. In *Trapp v. Barley*, 897 S.W.2d 159, 165-66 (Mo. Ct. App. 1995), the Missouri Court of Appeals determined the trial court's award of liquidated and actual damages was proper because the contract authorized liquidated and actual damages. Also, the Court found the sellers "suffered separate and distinct injuries" for modifying the home per the buyers' request but were not paid for the modifications, which entitled the sellers to an award of actual damages. *Id*.

Crete Homes points to *Warstler v. Cibrian*, 859 S.W.2d 162 (Mo. Ct. App. 1993), to counter Fargo Assembly's request for specific performance. (Doc. 32, at 3-4.) In *Warstler*, the Missouri Court of Appeals observed liquidated damages provisions are upheld if they are reasonable and "the parties agreed in good faith upon a sum as damages . . . ." *Id*. at 165 (citation omitted). When a contract includes a liquidated damages provision, courts generally do not award both liquidated and actual damages "as compensation for the same injury." *Id*. This is because contractual "liquidated damages take the place of any actual damages" and "recovery for breach is limited to the amount so agreed upon." *Id.* (quoting *Trans World Airlines, Inc. v. Travelers Indem. Co.,* 262 F.2d 321, 325 (8th Cir. 1959)).

Like the matter before this Court, the parties in *Warstler* agreed if the buyer "fails to comply with the contract," the $2,000 earnest money would be forfeited by the buyer and "paid to the SELLER as liquidated damages." *Id*. at 165. The Missouri Court of Appeals found the parties' contract permitted liquidated damages but did not provide for "alternative remedies such as specific performance or actual damages." *Id*. at 166. Because the parties did not dispute the

validity of the liquidated damages provision, the appellate court found the parties' "stipulated amount" controlled the "measure of damages," and the sellers' recovery was limited to the parties' stipulated amount, "even though the actual loss may be greater or less." *Id*. (citation omitted).

Here, the parties agreed if Crete Homes refused to close the sale, the $10,000 earnest money would be "forfeited as liquidated damages." (Doc. 10-1, at 5, § X.) The liquidated damages provision limits recovery to the $10,000 earnest money and does not permit alternate remedies. Critically, neither party questions the validity of the liquidated damages provision. Accordingly, the Court denies Fargo Assembly's request for specific performance. The Court finds Fargo Assembly is entitled only to the $10,000 earnest money deposit as specified in the contract's liquidated damages provision.

## Conclusion

For the foregoing reasons, the Court (1) **GRANTS IN PART** Fargo Assembly's Motion for Judgment on the Pleadings (Doc. 29) regarding its claim for declaratory judgment (Count II) but **DENIES IN PART** its Motion for Judgment on the Pleadings on its claim for specific performance (Count I); (2) **DENIES** Crete Homes' Motion for Judgment on Pleadings (Doc. 31); and (3) **ENTERS JUDGMENT** in Fargo Assembly's favor in the amount of $10,000.

**IT IS SO ORDERED.**

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: May 29, 2020